## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **CRIMINAL ACTION** |
| | ) | **No. 12-20122-01-KHV** |
| v. | ) | |
| | ) | **CIVIL ACTION** |
| CARLA WELBORN, | ) | **No. 13-2505-KHV** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### MEMORANDUM AND ORDER

On July 30, 2013, the Court sentenced defendant to 21 months in prison.  This matter is before the Court on defendant's <u>Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody</u> (Doc. #40) filed September 30, 2013.  For reasons stated below, the Court overrules defendant's motion.

### Factual Background

On November 30, 2012, before Magistrate Judge James P. O'Hara, defendant pled guilty to embezzlement from the Credit Union of Leavenworth County in violation of 18 U.S.C. § 657.  As part of the factual basis for the guilty plea, the parties agreed that the government had evidence that an accounting firm (J. Tenbrink & Associates) had determined that defendant stole approximately $304,000.00 from 23 Credit Union members.  See <u>Plea Agreement</u> (Doc. #19) filed November 30, 2012, ¶ 2.  The Credit Union initially determined that it was missing $79,000.00 cash from its vault.  Defendant admitted taking $79,000.00 cash from the vault, but denied that the Credit Union or its members suffered additional losses.[1]  The Plea Agreement provided that "if the parties are unable

---

[1]     Defendant did not dispute that the Credit Union also incurred the cost of the audit, $43,502.55.

to agree on the embezzlement/loss amount prior to sentencing, each party reserves the right to present evidence at the sentencing hearing." See id., ¶ 1.

Defendant retained Michael D. Peroo, a certified public accountant ("CPA"), to review the audit by J. Tenbrink & Associates and to "reconstruct" defendant's transactions to determine the loss amount. Peroo reviewed the financial records of the Credit Union, the reports from J. Tenbrink & Associates (including the annual audits of the Credit Union for 2010 and 2011), and the fraud audit and bond claim. Peroo also interviewed defendant and had her explain the various transactions. Peroo issued a 22-page report that included analysis of the bond claim report, the Credit Union vault balancing worksheets, checks written to Country Club Bank, various ledger transactions for vault cash, transactions which defendant conducted on victim accounts and documents which defendant prepared. Peroo found that "excluding the audit fee, the loss reported by the Credit Union's auditors amounted to $286,200 of which the defendant admitted to only $79,000, which does correspond to the difference in the cash count at the time she reported her activities. This loss would have reduced the equity of the Credit Union by 27%, this is significant and the Credit Union should have noticed this type of loss." Report Of Michael D. Peroo, CPA, PA, attached to Sentencing Memorandum (Doc. #35).

The Court held parts of the sentencing on May 7 and 8, 2013, then granted defendant's motion to continue so that defendant and her counsel could further investigate and review the Credit Union's fraud audit report. At sentencing, the Court heard testimony from defendant and a CPA at J. Tenbrink & Associates. The Court overruled defendant's objection to the loss amount of $329,602.55, as calculated in the presentence report. On July 30, 2013, the Court sentenced defendant to 21 months in prison and ordered restitution in the amount of $329,602.55. Specifically,

the Court ordered defendant to pay $28,002.55 to the Credit Union and $301,700.00 to CUNA Mutual Group (the Credit Union insurance carrier).  Defendant did not appeal.  E. Roger Horsky represented defendant as retained counsel throughout this proceeding.

On September 30, 2013, defendant filed a pro se motion to vacate her sentence under 28 U.S.C. § 2255.  Liberally construed, defendant's motion alleges that Horsky provided ineffective assistance because (1) he did not conduct any pretrial investigation to make an informed evaluation of viable defenses (Sections 12.A. and 12.C. of defendant's motion), (2) he did not ensure that defendant's guilty plea was voluntary and knowing (Section 12.B.) and (3) he did not prepare for sentencing or adequately object to the amount of restitution (Sections 12.C. and 12.D.).  See Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. #40) at 4-5.

## Analysis

The standard of review of Section 2255 petitions is quite stringent.  The Court presumes that the proceedings which led to defendant's conviction were correct.  See Klein v. United States, 880 F.2d 250, 253 (10th Cir. 1989).  To prevail, defendant must show a defect in the proceedings which resulted in a "complete miscarriage of justice."  Davis v. United States, 417 U.S. 333, 346 (1974).

To establish ineffective assistance of counsel, defendant must show that (1) the performance of counsel was deficient and (2) the deficient performance was so prejudicial that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland v. Washington, 466 U.S. 668, 687, 694 (1984).  To meet the first element, i.e. counsel's deficient performance, defendant must establish that counsel "made

-3-

errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.  In other words, defendant must prove that counsel's performance was "below an objective standard of reasonableness." United States v. Walling, 982 F.2d 447, 449 (10th Cir. 1992).  The Supreme Court recognizes, however, "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; see United States v. Rantz, 862 F.2d 808, 810 (10th Cir. 1988).

## I.       Inadequate Investigation (Claim 1)

Defendant argues that Horsky did not conduct any pretrial investigation to make an informed evaluation of viable defenses.  See Motion Under 28 U.S.C. § 2255 (Doc. #40) at 7.  At the plea hearing, defendant conceded that the government had evidence that she committed the crime of embezzlement from a credit union.  See Plea Agreement (Doc. #19) ¶ 2.  Defendant disputes the amount of restitution, but she has not cited any potential legal or factual defense to the charge of embezzlement.  Defendant claims that Horsky accepted the government's version of the facts and never questioned or investigated whether they were true.  See Motion Under 28 U.S.C. § 2255 (Doc. #40) at 7.

When law enforcement officers initially interviewed defendant in January of 2012, she admitted taking money from the credit union vault and member accounts as far back as 2007.  See Presentence Investigation Report (Doc. #27) ¶ 16.  She also admitted using money from customer accounts to offset the loss in the vault.[2]  See id.  In her motion to vacate, defendant concedes that

---

[2]       Defendant's claim is vague as to what investigation she claims Horsky should have conducted.  To the extent she implies that counsel failed to interview or subpoena witnesses, she must provide an affidavit of the potential witness as to the nature of the proposed testimony.  See United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) (to show ineffective assistance, evidence
(continued...)

she repeatedly said that she took $79,000.00 in cash from the credit union.  See Motion Under 28 U.S.C. § 2255 (Doc. #40) at 9.  In light of defendant's admission of guilt, counsel's decision not to further investigate factual or legal defenses was reasonable.  Defendant has not shown that counsel's decision not to investigate was uninformed.  See Hooper v. Mullin, 314 F.3d 1162, 1170-71 (10th Cir. 2002).

Even if counsel was deficient for failing to investigate potential defenses, defendant has not alleged prejudice from counsel's error.  To show prejudice in the guilty plea context, defendant must show a reasonable probability that but for counsel's errors, she would not have pled guilty and would have insisted on going to trial.  See Hill v. Lockhart, 474 U.S. 52, 59 (1985); United States v. Clingman, 288 F.3d 1183, 1186 (10th Cir. 2002); Miller v. Champion, 262 F.3d 1066, 1068-69 (10th Cir. 2001).  As part of her proof, defendant must show that "a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010) (citing Roe v. Flores-Ortega, 528 U.S. 470, 480, 486 (2000)).  Here, defendant has not alleged or shown a reasonable probability that if counsel had more thoroughly investigated potential defenses, she would not have pled guilty and would have insisted on going to trial, or that such a

---

[2](...continued)
about testimony of putative witness must generally be presented by witness testimony or affidavit); Sanders v. Trickey, 875 F.2d 205, 210-11 (8th Cir. 1989) (failure to provide affidavit from witness regarding potential testimony precludes finding of prejudice); United States v. Schaflander, 743 F.2d 714, 721 (9th Cir. 1984) (to warrant evidentiary hearing, movant must submit affidavit or sworn statement from witness or counsel); United States v. Anderson, No. 95-20086-JWL, 2003 WL 22757928, at *3 (D. Kan. Nov. 6, 2003) (Section 2255 movant required to submit affidavit of putative witness); United States v. Cosby, 983 F. Supp. 1022, 1026 (D. Kan. 1997) (prejudice not established where defendant did not submit affidavit of potential alibi witnesses); see also United States v. Jones, 124 F.3d 218 (Table), 1997 WL 580493, at *1 (10th Cir. Sept. 19, 1997) (certificate of appealability on ineffective assistance claim denied because defendant did not present specific facts to show that co-defendant would have offered exculpatory evidence).

decision would have been rational under the circumstances.[3]

The Court overrules defendant's first claim for relief.

**II.     Assistance Involving Change Of Plea (Claim 2)**

Defendant argues that Horsky provided ineffective assistance because he did not ensure that defendant's guilty plea was voluntary and knowing.  See Motion Under 28 U.S.C. § 2255 (Doc. #40) at 4.  Specifically, defendant asserts that Horsky "rushed her into the plea agreement without any explanation or exploration of plea possibilities and never explained the risk, benefits, or significance of a plea agreement at any time."  See id.

Defendant's claim is directly refuted by the plea petition, the plea agreement and her statements at the change of plea colloquy.  As part of the plea proceedings, defendant affirmed under oath that she had discussed the plea agreement with counsel, that her plea was free and voluntary, that no one had forced or threatened her to enter it, that nobody made promises to induce her to plead guilty, that she was fully satisfied with the advice and representation of counsel and that the only reason she was making a plea of guilty was that she was in fact guilty as charged.  See Petition To Enter Plea Of Guilty And Order Entering Plea (Doc. #18) ¶ 9, Plea Agreement (Doc. #19) ¶ 16. Absent a believable reason justifying departure from their apparent truth, the accuracy and truth of an accused's statements at a Rule 11 proceeding are conclusively established.  United States v. Glass, 66 F. App'x 808, 810 (10th Cir. June 3, 2003); Jones, 1997 WL 580493, at *1; United States v. Bambulas, 571 F.2d 525, 526 (10th Cir. 1978).  Defendant's conclusory statement that counsel

---

[3]        From a review of the record, it is readily apparent that defendant's present motion is motivated by dissatisfaction with the amount of her restitution obligation, not a legitimate challenge to her conviction for embezzlement of a credit union.  Defendant does not state that she would have likely prevailed at trial and the record does not reflect any viable defense against the charge.

rushed her to plead guilty without any explanation is insufficient to establish that counsel's performance was deficient.

Even if counsel had rushed defendant or failed to adequately explain the plea agreement, defendant has not shown prejudice. As noted above, defendant has not shown a reasonable probability that but for counsel's alleged conduct, the results of the plea proceeding would have been different, i.e. she would not have agreed to plead guilty. See United States v. Young, 206 F. App'x 779, 785 (10th Cir. 2006); Rantz, 862 F.2d at 810-11.

Defendant also argues that counsel was ineffective because shortly before the plea, he told defendant that "we will have the amount [of loss] changed." Motion Under 28 U.S.C. § 2255 (Doc. #40) at 7. Defendant's assertion that counsel made such a prediction is refuted by the record. Defendant understood that after the plea, the parties would negotiate about the loss amount and if they could not agree on the amount, both parties could present evidence at sentencing. See Plea Agreement (Doc. #19) ¶ 1 ("If the parties are unable to agree on the embezzlement/loss amount prior to sentencing, each party reserves the right to present evidence at the sentencing hearing."); Transcript Of Sentencing On May 7 And 8, 2013 (Doc. #43) at 82 (defendant stated that she understood that before sentencing, parties would have "back and forth" on loss amount). At the change of plea hearing, based on the plea agreement and statements of counsel, defendant fully understood that the Court would base the restitution award on a subsequent agreement by counsel and/or evidence presented at sentencing. Defendant was well aware that counsel had no authority to make any "promise, suggestion, or prediction" that the loss amount would be changed automatically. Petition To Enter Plea Of Guilty And Order Entering Plea (Doc. #18) ¶ 16. Even if Horsky made such a statement, defendant has not alleged sufficient facts to show that in light of the

-7-

plea colloquy, his statement was prejudicial.  Defendant was informed that the parties would attempt to come up with an agreed restitution amount and that if they did not, she could present evidence at sentencing.  She was also informed that counsel's prediction could be wrong.  Defendant nonetheless pled guilty.

An erroneous sentencing prediction is not prejudicial where the Court has conducted an adequate Rule 11 colloquy.  See United States v. Kutilek, 260 F. App'x 139, 147 (10th Cir. 2008) (no prejudice from attorney miscalculation in light of judge's statements at plea hearing); United States v. Hamilton, 510 F.3d 1209, 1216 (10th Cir. 2007) (same); United States v. Shedrick, 493 F.3d 292, 299-300 (3d Cir. 2007) (same); United States v. Gordon, 4 F.3d 1567, 1571 (10th Cir. 1993) (same); Doganiere v. United States, 914 F.2d 165, 168 (9th Cir. 1990) (same); United States v. Cruce, No. 97-3167-DES, 1997 WL 557382, at *2 (D. Kan. Aug. 14, 1997) (same; prediction of 36-47 months, sentence of 168 months); United States v. Marsh, 733 F. Supp. 90, 93 (D. Kan. 1990) (same; prediction of three years, sentence of nine years).  In addition, defendant has not shown that in light of the evidence against her and the benefits under the plea agreement, "a decision to reject the plea bargain would have been rational under the circumstances."  Padilla, 559 U.S. at 372. Accordingly, defendant was not prejudiced by counsel's alleged assurance that the restitution amount would be changed from the amount asserted by the government.[4]

In addition to defendant's statements as part of her change of plea, defendant acknowledged at the sentencing hearing on May 8, 2013 that she was satisfied with counsel's representation and

---

[4]        In addition, as noted above, defendant has not shown a reasonable probability that but for counsel's alleged conduct, the results of the plea proceeding would have been different, i.e. she would not have agreed to plead guilty.  See Young, 206 F. App'x at 785; Rantz, 862 F.2d at 810-11.

that she and Horsky wanted an opportunity to meet with the AUSA and present their position on

restitution.  At the hearing on May 8, 2013, the Court directly questioned whether Horsky had

conducted himself in a manner that complied with his duty to competently represent his client.  The

Court asked Horsky if he thought that he should return defendant's retainer and allow her to hire

another attorney.  Horsky stated that he felt he had done an adequate job representing his client, but

that he would consider bringing in co-counsel at the next hearing to assist him.  Defendant agreed

that Horsky had adequately prepared her case.  The Court inquired as follows:

> The Court: Well, Miss Welborn, what do you think is the best thing to do at this point?
>
> The Defendant: I feel that Roger's doing his job.  We've just run across so many hurdles with receiving information from the FBI, the credit union, as soon as we got that information, we jumped on it.  I've never been questioned by anybody, asked any explanation other than my attorney and the CPA.  So we've never had the opportunity to make an explanation.  I know that Roger has kept in touch with me pretty much on a weekly basis to let me know how things are going and we didn't receive the audit report until February.  And I understand it was done in July.  And it wasn't because we didn't try.  When we went to court and I plead guilty, it was under the understanding, because I took extra time speaking to Judge O'Hara in regards to that amount because I did not want to be charged without being able to put a defense up in that amount because from the beginning I said $79,000.  And with the opportunity for 30 days for a continuance, I know that the CPA firm and Roger has piecemealed everything together that we need to prove that amount.
>
> The Court: Okay.  So if you want to proceed with Mr. Horsky, that's your choice and he's your retained lawyer.  I just want you to understand that after this is all said and done, you've heard about the preparation he did and didn't do before you entered your guilty plea; you've heard about the preparation he did and didn't do to get ready for the sentencing which was set for this week.  And I don't want you coming back thinking you can convince me that he was not effectively representing you.  I've told you my concerns and you choose to go ahead.  That's absolutely your right.  You have more information about your communications with him and how he's represented you in this case, so I'm not going to try and talk you out of staying with him.  I just am not going to be favorably inclined if you change your mind because you get unhappy with the outcome and decide that he wasn't doing such a good job after all.

-9-

The Defendant: Oh no ma'am. I don't think that. I really – I know when we went in and plead the guilty plea that we were unaware of the amount at all until February we actually got a - -

The Court: Well, it's in the Plea Agreement, Miss Welborn.

The Defendant: Right. And I did discuss that with Judge O'Hare--Hara. And I know that we discussed it with Mr. Wamble as well, but that it was agreed upon then that there would be some back and forth, you know, prior to sentencing. And we're to a point where we can get to that back and forth and we'd like to meet with him and discuss it with him and show them from our side, but that's strictly up to you, Your Honor.

Transcript Of Sentencing On May 7 And 8, 2013 (Doc. #43) at 80-82.

Defendant has not alleged sufficient facts to show that Horsky's assistance during her change of plea was deficient or prejudicial. The Court overrules defendant's second claim for relief.

## III.   Assistance At Sentencing

Defendant argues that Horsky did not prepare for sentencing or adequately object to the amount of restitution.[5]  See Motion Under 28 U.S.C. § 2255 (Doc. #40) at 4-5. Here, the record reflects that Horsky hired Peroo, a CPA, who interviewed defendant about the various transactions. Horsky reasonably relied on Peroo to prepare a report and to challenge the conclusion of the Credit Union's audit. See Clark v. Mitchell, 425 F.3d 270, 285 (6th Cir. 2005) (not unreasonable for counsel to rely on opinions of mental health professionals); Walls v. Bowersox, 151 F.3d 827, 834 n.4 (8th Cir. 1998) (not unreasonable for lawyer to use surrogates to investigate and interview potential witnesses rather than doing so personally); Duran v. Bravo, No. CIV. 10-0743 JB/GBW, 2012 WL 2175768, at *13 (D.N.M. June 11, 2012) (attorney reliance on investigative reports

---

[5]      Ordinarily, a defendant cannot challenge the restitution portion of her sentence in a Section 2255 motion. See United States v. Grigsby, 579 F. App'x 680, 684 (10th Cir. 2014). The Court addresses defendant's claim because the government has not objected and defendant's challenge to counsel's performance on the amount of restitution is partially related to her claim that she did not voluntarily and knowingly enter a guilty plea.

reasonable); see also United States v. Glick, 710 F.2d 639, 644 (10th Cir. 1983) (attorney decision not to interview witnesses and rely on other sources of information, if made in exercise of professional judgment, not deficient performance).   Horsky submitted Peroo's report with defendant's sentencing memorandum.   At sentencing, when Peroo was not present, Horsky had defendant testify and explain precisely how she claimed the various transactions worked.  Counsel's decision to submit Peroo's report and have defendant testify at sentencing was within the wide range of reasonable professional assistance.

Even if defendant could somehow show that Horsky's performance was deficient in this regard, she has not alleged sufficient facts to show that counsel's performance was prejudicial. Defendant has not shown what counsel could have done at sentencing for the Court to adopt her suggested loss figure of $79,000.  Counsel filed a sentencing memorandum and expert report on the issue.  At sentencing, defendant testified that she took $79,000 from the credit union vault.  In January of 2012, the credit union verified that the vault was short $79,000.  Defendant also testified that she used the money from the accounts of individual account holders to replenish the cash in the vault so that no one would discover her fraud.  Under defendant's theory, the vault should have been even and the $79,000 loss should have showed up as the total loss to individual accounts.  At sentencing, however, the government's expert testified that individual account holders had losses of $207,200 as a result of defendant's embezzlement.  See Government Sentencing Exhibit 1.  At sentencing and in the present motion, defendant never explains why the credit union vault would be short $79,000 in cash, or at all, if she had replenished the cash with money from individual member accounts.[6]  At sentencing, the Court carefully evaluated defendant's theory.  From the audit and the

_____

[6]     Defendant submitted a report by Peroo, but it also did not adequately explain why defendant would attempt to replenish the vault with $207,200 when she stole only $79,000.  See (continued...)

-11-

entire record, the Court concluded that from 2010 until January of 2012, defendant took $286,200 in cash from the vault and replenished $207,200 to the vault from individual member accounts.[7] Defendant has not shown a reasonable probability that but for counsel's performance at sentencing, the Court would have ordered a different amount of restitution.  See Strickland, 466 U.S. at 694.

The Court overrules defendant's third claim for relief.

## Conclusion

The files and records in this case conclusively show that defendant is not entitled to relief. Moreover, defendant does not allege specific and particularized facts which, if true, would entitle her to relief.  Accordingly, no evidentiary hearing is required.  See 28 U.S.C. § 2255; United States v. Cervini, 379 F.3d 987, 994 (10th Cir. 2004) (standard for evidentiary hearing higher than notice pleading); United States v. Kilpatrick, 124 F.3d 218 (Table), 1997 WL 537866, at *3 (10th Cir. 1997) (conclusory allegations do not warrant hearing); United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1988) (no hearing required where court may resolve factual matters raised by Section 2255 petition on record); United States v. Barboa, 777 F.2d 1420, 1422-23 (10th Cir. 1985) (hearing not required unless "petitioner's allegations, if proved, would entitle him to relief" and allegations are not contravened by record).

---

[6](...continued)
Report Of Michael D. Peroo, CPA, attached to Sentencing Memorandum (Doc. #35) filed July 25, 2013.

[7]       Defendant actually took $292,899.44 from individual member accounts to replenish the vault cash, but credited $85,699.44 back to various accounts after some individuals questioned why funds had been removed from their accounts.  See Government Sentencing Exhibit 1. Assuming that no individual members had questioned the transactions and defendant had not credited back any of the money, the total amount taken from individual customer accounts ($292,899.44) was relatively close to the total amount of cash that the Court found that defendant took from the vault ($286,200.00).

## Certificate Of Appealability

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).[8]  To satisfy this standard, the movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Saiz v. Ortiz, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting Tennard v. Dretke, 542 U.S. 274, 282 (2004)).  For reasons stated above, the Court finds that defendant has not satisfied this standard.  The Court therefore denies a certificate of appealability as to its ruling on defendant's Section 2255 motion.

**IT IS THEREFORE ORDERED** that defendant's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. #40) filed September 30, 2013 be and hereby is **OVERRULED**.  A certificate of appealability as to the ruling on defendant's Section 2255 motion is **DENIED**.

Dated this 20th day of May, 2015 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge

---

[8]      The denial of a Section 2255 motion is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability.  See Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).